

**NOT FOR PUBLICATION**

FILED
NOV 13 2017
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>DAYA RAM CHANDAR and JASWANTI DEVI CHANDAR,<br><br>　　　　　　　Debtor(s).<br><br>DOUGLAS M. WHATLEY, in his capacity as Chapter 7 Trustee for the bankruptcy estate of Daya Ram Chandar and Jaswanti Devi Chandar,<br><br>　　Plaintiff(s),<br>v.<br><br>MEYER WILSON CO., LPA, DAYA RAM CHANDAR and JASWANTI DEVI CHANDAR,<br><br>　　　　　　　Defendant(s). | Case No. 11-37360-B-7<br><br>Adversary No. 17-2057<br><br>DC No. BHS-1 |

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Before the court is a motion to compel the production of documents filed by plaintiff Douglas M. Whatley in his capacity as the chapter 7 trustee appointed in the above-referenced chapter 7 case. Plaintiff's motion is opposed by defendants Meyer Wilson Co., LPA, Daya Ram Chandar, and Jaswanti Devi Chandar. The Chandar defendants are also the debtors in the parent chapter 7 case and will be referred to as such when appropriate.

A hearing on the plaintiff's motion was held on October 3, 2017, and was continued to November 14, 2017. Appearance at the October 3, 2017, hearing were noted on the record. The continued hearing is vacated by this memorandum and order. This memorandum and order also constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014.

**INTRODUCTION**

The present dispute concerns the applicability of the attorney-client and work-product privileges to a request by the plaintiff for the production of documents. Defendants maintain the privileges apply to plaintiff's document request and therefore no document production is required. Plaintiff asserts that defendants have not established that privileges apply. Both parties also dispute who controls and may waive the privileges, *i.e.*, the plaintiff as the chapter 7 trustee in the parent bankruptcy case or the chapter 7 debtor defendants.

If this adversary proceeding involved a corporate chapter 7 debtor, the answer to the latter dispute would be easy. In Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343 (1985), the U.S. Supreme Court sided with the chapter 7 trustee holding that the trustee controlled the privilege because the trustee controlled the corporate debtor as successor management. Id. at 358. But, as noted, Weintraub was a corporate chapter 7 case and in its opinion the Supreme Court also stated that its holding would not necessarily apply in an individual chapter 7

case because the trustee does not control an individual in the same manner as the trustee controls a corporate entity after a petition is filed. See id., 471 U.S. at 356-57. That has led to substantial disagreement and no uniformity, including among courts in the Ninth Circuit. Three approaches have developed.

Some courts hold that an individual chapter 7 debtor's privileges transfer to the trustee and the trustee controls the privileges as a matter of law. In re Smith, 24 B.R. 3, 5 (Bankr. S.D. Fla. 1982); In re Ingram, 1999 WL 33486089, *5-6 (Bankr. D.S.C. 1999). Citing Weintraub's distinction in the trustee's control over a corporate and individual debtor, other courts hold that an individual chapter 7 debtor's privileges do not transfer to the trustee and therefore remain under the debtor's control. In re Bounds, 443 B.R. 729, 734-35 (Bankr. W.D. Tex. 2010); In re Hunt, 153 B.R. 445, 454 (Bankr. N.D. Tex. 1992). And still other courts take a balancing approach which weighs potential harm to the individual chapter 7 debtor by allowing the trustee to control the debtor's privileges against the trustee's need for privileged information in the administration of the estate. Foster v. Hill (In re Foster), 188 F.3d 1259, 1265-66 (10th Cir. 1999); In re Bame, 251 B.R. 367, 376 (Bankr. D. Minn. 2000); In re Miller, 247 B.R. 704, 709 (Bankr. N.D. Ohio 2000); In re Rice, 224 B.R. 464, 469 (Bankr. D. Or. 1998).[1]

Fortunately, this court need not join the fray. The court agrees with plaintiff that defendants have not satisfied their

---

[1] The balancing approach was recently rejected as inconsistent with Supreme Court and Ninth Circuit authority, and also noted as inapplicable under California law. See In re Ginzburg, 517 B.R. 175, 182-83 (Bankr. C.D. Cal. 2014).

burden of establishing that the attorney-client and work-product privileges apply. Therefore, for the reasons explained below, plaintiff's motion to compel the production of documents will be granted in part and denied in part and defendants' objections to plaintiff's request for the production of documents will be overruled in part and sustained in part.

**BACKGROUND**[2]

The debtors filed a voluntary chapter 7 petition on July 14, 2011. The debtors' discharge was entered on October 31, 2011.

On November 16, 2011, Daya Chandar and Meyer Wilson entered into an Engagement Agreement in which Meyer Wilson agreed to pursue claims against World Group Securities ("WGS").[3] According to the Engagement Agreement, those claims are based on conduct that occurred between October 2005 and December 2009. Thus, the claims that Meyer Wilson agreed to pursue under the Engagement Agreement were all based on conduct that occurred before the debtors filed their chapter 7 petition in July of 2011.

The debtors' chapter 7 case was closed on November 21, 2011, five days *after* Daya Chandar and Meyer Wilson entered into the Engagement Agreement. The bankruptcy case was reopened on June 4, 2015, and plaintiff was appointed the trustee on June 5, 2015.

---

[2]Facts that follow are based on defendants' admission of allegations in plaintiff's complaint which are judicial admissions in this adversary proceeding. American Title Ins. v. Lacelaw, 861 F.2d 224, 226 (9th Cir. 1988). The court also takes judicial notice of the docket in this adversary proceeding and in the parent chapter 7 case.

[3]A copy of the Engagement Agreement is attached as Exhibit A to the complaint.

- 4 -

The complaint that commenced this adversary proceeding was filed on April 12, 2017. Defendants answered the complaint on June 30, 2017. The seventeenth affirmative defense in that answer is relevant. It states as follows: "DEFENDANTS are informed and believe and thereon allege that he relied in good faith upon the advice of counsel with regard to the allegations in Plaintiff's Complaint." Dkt. 29, ¶ 70, at 9.

The present discovery dispute arises out of a request for production of documents that plaintiff served on defendants on July 11, 2017. That document request states as follows:

> REQUEST NO. 1: Any and all records, pleadings and correspondence (including, but not limited to, letters, facsimiles, emails and text messages) contained in Meyer Wilson's client file for Daya Ram Chandar and Jaswanti Devi Chandar, as listed on Defendants Initial Disclosures of documents.
>
> REQUEST NO. 2: Any and all pleadings and Settlement Agreement from FINRA Arbitration Case against Transamerica Financial Advisors, Inc./World Group Securities and checks representing payment of net proceeds, as listed on Defendants Initial Disclosures of documents.
>
> REQUEST NO. 3: Any and all records and files relating to the Adversary proceeding, entitled "Prasad v. Singh" case no. 10-02785, as listed on Defendants Initial Disclosures of documents.
>
> REQUEST NO. 4: Each and every document you intend to introduce as either an exhibit or evidence at the trial on this matter.

Defendants responded to plaintiff's document request on August 17, 2017. Defendants withheld certain documents on the basis of the attorney-client and work-product privileges. The parties met and conferred between September 7, 2017, and September 12, 2017.

DISCUSSION

Defendants, as proponents, have the burden of establishing the applicability of the attorney-client privilege and the nonwaiver of it. Weil v. Investment/Indicators, Research and Management, 647 F.2d 18, 25 (9th Cir. 1981); Cargill, Inc. v. Budine, 2008 WL 2856642, *2 (E.D. Cal. 2008). The work-product proponent also has "[t]he burden of establishing protection of materials as work product[,]" Riverkeeper v. U.S. Corp. of Army Engineers, 38 F. Supp. 3d 1207, 1217 (D. Or. 2014) (quotations omitted), and nonwaiver. McMorgan & Co. v. First Calif. Mortg. Co., 931 F. Supp. 703, 707 (N.D. Cal. 1996). See also Skynet Elec. Co. Ltd. v. Flextronics Int'l, Ltd., No. C, 2013 WL 6623874, at *2 (N.D. Cal. 2013) (party asserting work-product privilege bears burden of establishing applicability and nonwaiver); accord Hanson v. Wells Fargo Home Mortg., Inc., 2013 WL 5674997, *5 (W.D. Wa. 2013). Defendants have not satisfied this burden with regard to either privilege.

I.   Waiver of the Privileges.

Defendants' answer asserts an "advice of counsel" defense. Asserting the "advice of counsel" defense waives the attorney-client privilege as to communications and documents within the scope of counsel's advice. Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) ("[s]ubstantial authority holds the attorney-client privilege to be impliedly waived where the client asserts a claim or *defense* that places at issue the nature of the privileged material.") (emphasis in original); Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162-63 (9th Cir. 1992). The work-product privilege may also be waived, Hernandez v. Tanninen, 604

F.3d 1095, 1100 (9th Cir. 2010); Coleman v. Brown, 2013 WL 597491, *5 (E.D. Cal. 2013) (citations omitted). And it too is similarly waived by asserting the "advice of counsel" defense. In re EchoStar Communications Corp., 448 F.3d 1294, 1304 (Fed. Cir. 2006). Indeed, as the district court stated in Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182 (E.D. Cal. 2001), with regard to both privileges: "Fairness requires that a party who seeks to be absolved of [liability] because it relied on counsel's advice pay the discovery price. The party asserting the defense waives attorney-client privilege and work product immunity to the broadest extent consonant with direct relevance to the advice of counsel itself." Id. at 1188-89.[4]

As noted above, the seventeenth affirmative defense in the defendants' answer asserts an "advice of counsel" defense. Based on the manner in which the defense is stated, i.e., "that **he** relied in good faith upon the advice of counsel with regard to the allegations in Plaintiff's Complaint[,]" the court reads the defense as an assertion by Daya Chandar that he relied on Meyer Wilson's advice with regard to all matters alleged in the complaint. Therefore, as to the subject of all matters alleged in the complaint, defendants have failed to establish the nonwaiver of the attorney-client and work-product privileges, at

---

[4] Federal law governs privileges in a bankruptcy case. See Fed. R. Bankr. P. 9017; Fed. R. Evid. 501; Ginzburg, 517 B.R. at 180. However, the result would be the same even if California law applied. Under California law, "the deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice." Transamerica Title Ins. Co. v. Sup.Ct. (Bank of the West), 188 Cal. App. 3d 1047, 1053 (1987). Same with regard to the work-product privilege. See Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110, 128 (1997).

least as between Daya Chandar and Meyer Wilson. But that does not end the inquiry.

The waiver resulting from an "advice of counsel" defense is an implied waiver, and because of that <u>Bittaker</u> instructs as follows:

> The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the materials if it wishes to go forward with its [defense] implicating them. The court gives the holder of the privilege a choice: If you want to [defend against] this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to [challenge or refute the defense].

<u>Bittaker</u>, 331 F.3d at 720.

Consistent with <u>Bittaker</u>, the court would typically give defendants the option of retaining the "advice of counsel" defense and producing documents withheld under the attorney-client and work-product privileges or amending the answer to eliminate the defense and preclude the use of such documents in this adversary proceeding. However, doing so here would be futile because defendants have also failed to establish an additional element necessary for both privileges to apply in the first instance.

II. <u>Existence of the Privileges.</u>

An element of the attorney-client privilege is the existence of an attorney-client relationship. In other words, "[f]irst and foremost, the attorney-client privilege applies only if an attorney-client relationship exists." <u>Bare v. Cruz</u>, 2012 WL 1138591, *3 (E.D. Pa. 2012).[5] Similarly, if "the parties did not

---

[5]In order to establish the existence of the attorney-client privilege, the Ninth Circuit requires proof of eight elements.

- 8 -

form an attorney-client relationship, there is no basis . . . to assert . . . the work product doctrine." Sol v. Whiting, 2013 WL 12098752, *5 (D. Ariz. 2013) (citations omitted).[6] Defendants have not satisfied their burden on this element for either privilege.

    A.    <u>The Engagement Agreement violated § 362(a)(3) of the Bankruptcy Code which means its it void and which also means there is no contractual basis shown for an attorney-client relationship.</u>

Section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). Actions that violate the automatic stay are void *ab initio*. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 570-72 (9th Cir. 1992); see also Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009); In re Sundquist, 566 B.R. 563, 585 (Bankr. E.D. Cal. 2017). This includes so-called "technical" violations, *i.e.*, acts that violate the automatic stay without knowledge of pending

---

"The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" U.S. v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting U.S. v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)); see also Lopez v. Vieira, 688 F. Supp. 2d 1050, 1058 (E.D. Cal. 2010). The second and fifth elements contemplate the existence of the attorney-client relationship.

[6]Indeed, in Upjohn Co. v. U.S., 449 U.S. 383, 397 (1981), the U.S. Supreme Court stated that the work-product privilege protects from discovery "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel *in the course of his legal duties*." Id. at 397 (emphasis added).

bankruptcy proceedings or the automatic stay. In re Lezzi, 504 B.R. 777, 792 (Bankr. E.D. Pa. 2014); In re Magallanez, 403 B.R. 558, 561 (Bankr. N.D. Ill. 2009); In re Brown, 282 B.R. 880, 883 (Bankr. E.D. Ark. 2002). Moreover, a later expiration or termination of the automatic stay does not revive or validate a void act resulting from a stay violation. See Sundquist, 566 B.R. at 585-86.

The claims against WGS identified in the Engagement Agreement are based on conduct that occurred before the debtors filed their chapter 7 petition. Those prepetition claims undeniably became property of the estate when the debtors filed their petition. See 11 U.S.C. § 541(a); Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001); Cobb v. Aurora Loan Services, LLC, 408 B.R. 351, 354 (Bankr. E.D. Cal. 2009) (citing cases). They vested exclusively in the chapter 7 trustee, see 11 U.S.C. § 323(a), and at least while the bankruptcy case was open on November 16, 2011, only the trustee had standing to prosecute those claims. See Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006) (bankruptcy code endows bankruptcy trustee with exclusive right to sue on behalf of the estate).

Defendants' position in this adversary proceeding confirms that the prepetition claims against WGS identified in the Engagement Agreement were property of the estate when the Engagement Agreement was signed on November 16, 2011. Throughout this adversary proceeding, defendants have repeatedly asserted that the prepetition claims against WGS identified in the Engagement Agreement were abandoned under § 554(c) of the

Bankruptcy Code when the debtors' chapter 7 case was closed on November 21, 2011. See Dkt. 43 at p. 3; see also Dkt. 10 at pp. 10-11. That issue is not decided by this memorandum and order; however, defendants' theory is telling. Property of the estate is a statutory element to any abandonment under Bankruptcy Code § 554. Thus, to the extent defendants assert that the prepetition claims against WGS identified in the Engagement Agreement left the estate on November 21, 2011, and then left through an abandonment, defendants inherently recognize those prepetition claims were property of the estate five days earlier when the Engagement Agreement was signed on November 16, 2011.

    Defendants also point out that the Engagement Agreement was signed after their discharge was entered in October 2011, as if to suggest that the entry of the discharge gave the debtors authority and standing to administer property of the estate on November 16, 2011. See Dkt. 43 at 4:1-3, 9:1-3. Not so. Entry of the discharge does not terminate the automatic stay as to property of the estate which remains protected by the automatic stay after the discharge is entered and until it is no longer property of the estate. Bigelow v. C.I.R., 65 F.3d 127, 128 (9th Cir. 1995) ("Under § 362(c)(1), an automatic stay prohibits "act[s] against property of the [bankruptcy] estate" following an order of discharge. 11 U.S.C. § 362(c)(1)."); In re Rich, 544 B.R. 436, 440 n.6 (Bankr. E.D. Cal. 2016); In re Burke, 2016 WL 3536618, *3 (Bankr. D. Nev. 2016) ("When the Discharge Order was entered on June 11, 2012, the automatic stay only terminated as to the Debtor, but remained with respect to all property of the Debtor's bankruptcy estate.").

The point is this: When the Engagement Agreement was signed on November 16, 2011, the prepetition claims against WGS identified in that agreement were property of estate. That makes the Engagement Agreement, and the agreement by Meyer Wilson therein to pursue the prepetition claims against WGS, an act to obtain or exercise control over property of the estate. That act - and thence the Engagement Agreement itself - violated § 362(a)(3) of the Bankruptcy Code. At a minimum, that means the Engagement Agreement is void.[7] And that also means the Engagement Agreement cannot establish a contractual basis for an attorney-client relationship. But again, that does not end the inquiry.

> B. <u>Defendants have also failed to carry their burden of establishing an implied-in-fact attorney-client relationship.</u>

Neither a retainer nor a formal agreement is required to establish an implied-in-fact attorney-client relationship. <u>Farnham v. State Bar</u>, 17 Cal. 3d 605, 612 (1976); <u>Kane, Kane & Kritzer, Inc. v. Altagen</u>, 107 Cal. App. 3d 36, 40-42 (1980). However, one of the most important criteria for finding an implied-in-fact attorney-client relationship is the consulting individual's expectation, as based on the appearance of the situation to a reasonable person in the individual's position. <u>Responsible Citizens v. Superior Court</u>, 16 Cal. App. 4th 1717, 1733 (1993). In other words, while the purported client's

---

[7] It is void even if Daya Chandar and Meyer Wilson were (or they could claim they were) unaware that the prepetition claims against WGS were still property of the estate on November 16, 2011, or that the debtors' chapter 7 case was open and pending on that date. And it would remain void.

1 subjective view may have some relevance, the test of whether an
2 attorney-client relationship implicitly formed is ultimately a
3 question of law and an objective one. <u>Sky Valley Ltd.</u>
4 <u>Partnership v. ATX Sky Valley Ltd.</u>, 150 F.R.D. 648, 652 (N.D.
5 Cal. 1993).
6 　　　　Defendants have failed to articulate how, if at all, it is
7 objectively reasonable for an individual chapter 7 debtor in a
8 pending and open bankruptcy case to believe that he may retain an
9 attorney to pursue prepetition claims that are property of the
10 estate, that by operation of federal bankruptcy law vested
11 exclusively in the chapter 7 trustee, and that as a matter of law
12 only the trustee had standing to prosecute.  Nor have the
13 defendants articulated how it is objectively reasonable for an
14 individual chapter 7 debtor in an administratively insolvent case
15 to believe that he has standing to administer prepetition claims
16 that are property of the estate.  Defendants offered a subjective
17 explanation during the hearing on the plaintiff's motion to
18 compel, *i.e.*, that Daya Chandar believed he retained Meyer Wilson
19 as his attorneys.  But even if that is the case, by itself, that
20 subjective belief is insufficient to establish an implied-in-fact
21 attorney-client relationship.

22 III. <u>Scope of Production Ordered</u>

23 　　　　Having failed to establish two critical elements, defendants
24 have failed to carry their burden of proving that the attorney-
25 client and work-product privilege are applicable to plaintiff's
26 document request.  Therefore, subject to the conditions and
27 modifications explained below, defendants will be ordered to
28 produce all documents that plaintiff requested within the scope

of the subject matter of the complaint and which were withheld under the attorney-client and work-product privileges.

Defendants' production of documents will be subject to an appropriate protective order. Plaintiff will be ordered to not disclose documents that the defendants produce in compliance with this order to any third-party (other than plaintiff's attorney) and plaintiff shall not use any documents produced in any proceeding other than this adversary proceeding without further order of the court. The parties will be given an opportunity to stipulate to an appropriate protective order that provides for these terms and any other terms the parties deem appropriate. If the parties are unable to agree on the terms of a protective order, this matter may be brought before the court on three (3) days' notice.

Within the foregoing parameters, the court turns to the specific requests in this case.

Request No. 1 is overbroad in that it asks defendants to produce all records, pleadings, and correspondence in the client file. This could include matters outside the scope of the complaint. The court will narrow this request to all records, pleadings, and correspondence in the client file related to the subject matter of the allegations in the complaint.

Request No. 2 is valid because it is limited to documents related to the FINRA arbitration which relates to the central allegations in the complaint.

Request No. 3 is valid because it relates to the adversary proceeding referenced in Ex. A to the complaint and therefore is part of the complaint.

Request No. 4 is overbroad in that it fails to satisfy the "reasonable particularity" requirement of Federal Rule of Civil Procedure 34(b)(1)(A), which is applicable by Federal Rule of Bankruptcy Procedure 7034.

IV. Attorney's Fees and Costs

Federal Rule of Bankruptcy Procedure 7037, which incorporates Federal Rule of Civil Procedure 37(a)(5)(C), permits the court to "apportion the reasonable expenses for the motion [to compel production]." Although not decided, the opposition raised an unsettled issue which the court was required to address. Moreover, because the requested documents were withheld under a claim of privilege, defendants' written opposition, nondisclosure, and objection to production were substantially justified. Therefore, the court makes no award to either party of attorney's fees and costs and apportions to each party their own attorney's fees and costs incurred in connection with the plaintiff's motion to compel.

**CONCLUSION**

For all the foregoing reasons,

IT IS ORDERED that plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART:

(1) GRANTED, and within fourteen (14) days of the entry of this order defendants shall produce all documents previously withheld under a claim of the attorney-client and/or work-product privileges, as follows: (i) documents in response to Request No. 1 as modified hereinabove; (ii) documents in response to Request No. 2, and (iii) documents in response to Request No. 3.

(2) DENIED, and defendants' objection to the production of documents under Request No. 4 is sustained.

(3) DENIED, as to any award to either party of attorney's

- 15 -

fees and costs and the parties shall bear their own attorney's fees and costs incurred in connection with plaintiff's motion and defendants' opposition.

IT IS FURTHER ORDERED that the continued hearing set for November 14, 2017, at 9:30 a.m. is VACATED.

Dated:　November 13, 2017.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Barry H. Spitzer
980 9th Street, Suite 380
Sacramento CA 95814

Kristin L. Iversen
88 Kearny St 10th Fl
San Francisco CA 94108